1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9   RAYSHON THOMAS,                          CASE NO. 1:06-cv-00649-AWI-YNP PC

10                          Plaintiff,       ORDER DISMISSING COMPLAINT, WITH
                                             LEAVE TO FILE AMENDED COMPLAINT
11          v.                               WITHIN 30 DAYS

12   MADERA   COUNTY   DEPARTMENT   OF (Doc. 22.)
     CORRECTIONS, et al.,
13
                            Defendants.
14
     _____/
15

16          Plaintiff Rayshon Thomas ("Plaintiff") is a state prisoner proceeding pro se and in forma

17   pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff is in the custody of the

18   California Department of Corrections and Rehabilitation ("CDCR") and is currently incarcerated at

19   Calipatria State Prison.  However, the events described in Plaintiff's complaint took place at Madera

20   County Jail.  Plaintiff names Doug Papagni, Jerry King, Perez, Rebecca Davis, Macias, Pat Herndon,

21   Bob Stillwell, Ted, Manuel, Dave, Herman Perez, Demor Martinez, Pete Martinez, Martin,

22   Rodriguez, Cody, Debbie, Followill, and Fisher as defendants.  Defendants are employed at Madera

23   County Jail.  For the reasons set forth below, the Court finds that Plaintiff's first amended complaint

24   fails to state any cognizable claims.  Plaintiff's first amended complaint will be dismissed and

25   Plaintiff will be given leave to file a second amended complaint within 30 days.

26   **I.    <u>Screening Requirement</u>**

27          The Court is required to screen complaints brought by prisoners seeking relief against a

28   governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

1

1  Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

2  "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

3  monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).

4  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

5  dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a

6  claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

7      In determining whether a complaint fails to state a claim, the Court uses the same pleading

8  standard used under Federal Rule of Civil Procedure 8(a).  Under Rule 8(a), a complaint must

9  contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.

10  R. Civ. P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual

11  allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me

12  accusation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v.

13  Twombly, 550 U.S. 544, 555 (2007)).  "[A] complaint must contain sufficient factual matter,

14  accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550

15  U.S. at 570).  "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's

16  liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Id.

17  (quoting Twombly, 550 U.S. at 557).  Further, although a court must accept as true all factual

18  allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.

19  Id.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

20  statements, do not suffice."  Id. (quoting Twombly, 550 U.S. at 555).

21  **II.**   **Background**

22      **A.**   **Procedural Background**

23      Plaintiff filed the original complaint in this action on May 26, 2006.  (Doc. #1.)  Plaintiff's

24  original complaint was screened by the Court on March 24, 2008.  (Doc. #19.)  Plaintiff's complaint

25  was dismissed for failing to state any claims.  Plaintiff was given leave to file an amended complaint.

26  Plaintiff filed his first amended complaint on April 28, 2008.  (Doc. #22.)  This action proceeds on

27  Plaintiff's first amended complaint.

28  ///

1

### B.    Factual Background

Plaintiff's complaint claims that the conditions in Madera County Jail violated Plaintiff's constitutional rights.  Plaintiff's complaint covers a wide range of issues.  Plaintiff's first claim is that jail officials served Plaintiff spoiled turkey and other unhealthy foods.  Plaintiff's second claim is that the canteen stopped selling phone cards.  Plaintiff's third claim is that the jail did not broadcast African American programs such as B.E.T. on its televisions.  Plaintiff's fourth claim complains about deficiencies in the jail's law library.  Plaintiff's fifth claim is that jail officials opened Plaintiff's legal mail outside his presence.  Plaintiff's sixth claim is that jail officials discarded Plaintiff's property.  Plaintiff's seventh claim is that the jail has failed to hire enough African American employees.  Plaintiff's eighth claim is based on alleged harassment by a gang member.  Finally, Plaintiff's ninth claim complains about being denied access to the law library.

## III.   Discussion

### A.    Plaintiff's First Claim for Relief

Plaintiff's first claim for relief is based on his complaints about the food at Madera County Jail.  Plaintiff's factual allegations are unclear.  Plaintiff's handwriting is illegible at times and Plaintiff's complaint is littered with confusing sentence fragments.  Plaintiff mentions being served spoiled turkey meat on occasion and also makes reference to a low sodium vegetarian diet.  It appears that the jail started serving Plaintiff peanut butter after Plaintiff complained about the turkey, but Plaintiff subsequently complained that it was too salty.  Plaintiff's complaint also contains references to pork, ham, and hot dogs, but the Court is unable to understand Plaintiff's complaints about these foods.  Plaintiff goes on to complain that the inadequate diet provided by the jail forces Plaintiff to purchase food at the commissary at "inflated prices."  Plaintiff concludes by stating that he has suffered "physical trauma, systematic harassment . . . great mental and emotional harm, anguish, damage to self-esteem, self-worth, shame, humiliation, loss of weight, imminent danger to plaintiff's health, weakness, injunctive relief, patterns of misconduct, harassment."

///

///

///

Plaintiff's allegations implicate his rights under the Eighth Amendment.[1]  The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968)).  A prison official violates the Eighth Amendment only when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious", Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991), and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind", Id. (quoting Wilson, 501 U.S. at 298).  The objective requirement that the deprivation be "sufficiently serious" is met where the prison official's act or omission results in the denial of "the minimal civilized measure of life's necessities". Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).  The subjective requirement that the prison official has a "sufficiently culpable state of mind" is met where the prison official acts with "deliberate indifference" to inmate health or safety. Id. (quoting Wilson, 501 U.S. at 302-303).  A prison official acts with deliberate indifference when he/she "knows of and disregards an excessive risk to inmate health or safety". Id. at 837.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

Jail officials are obligated under the Eighth Amendment to provide Plaintiff with nutritionally adequate meals.  See Foster v. Runnels, 554 F.3d 807, 812-813 (9th Cir. 2009); Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986) (prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety").  However, the Eighth Amendment does not require that the food provided to Plaintiff be tasty and the Court does not read Ninth Circuit precedent to require jail officials to provide food that is optimally nutritious. See LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993) ("The Eighth Amendment requires only that prisoners receive

---

[1]Plaintiff claims that Defendants violated his rights under the 1st, 5th, 8th, and 14th Amendments. However, Plaintiff provides no explanation how his rights under the First, Fifth, and Fourteenth Amendments were violated by Defendants actions and it is unclear to the court how these amendments are relevant to Plaintiff's claims. The Court will analyze Plaintiff's claims under the Eighth Amendment.  If Plaintiff wishes to amend his claims to state claims under the First, Fifth, or Fourteenth Amendments, Plaintiff must explain how these amendments were violated.

food that is adequate to maintain health; it need not be tasty or aesthetically pleasing.")  "The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation."  LeMaire, 12 F.3d at 1456.

Plaintiff made complaints about the food to various jail officials: Defendant Bob Stillwell, Macias, Jerry King, Douglas Papagni, K. Ruiz, Dave, Ted, Perez, Fisher, and Debbie.  However, it is not clear from Plaintiff's allegations whether any of these officials acted with deliberate indifference.  Plaintiff does not clearly identify what risk the food posed to his health.  Plaintiff does not allege that he suffered any serious health ailment as a result of the food, and it is unclear whether there was any risk of any serious health ailment as a result of the food.  Plaintiff vaguely alleges that the salty turkey made him sick.  Plaintiff does not elaborate on what kind of sickness he suffered from, whether it was mere discomfort from the salty taste, or whether it was a more serious sickness that threatened Plaintiff's health.  Plaintiff alleges that he lost a significant amount of weight from the food, though an allegation of weight loss, taken in the absence of any other allegations, such as whether Plaintiff's weight was normal to begin with, does not clearly convey any excessive health risk to the court.  Plaintiff mentions being compelled to adopt a vegetarian diet, though it is unclear how the vegetarian diet threatened his health.  Finally, Plaintiff complains about Defendants' failure to accommodate Plaintiff's request for a low-sodium diet.  Plaintiff does not identify the risk to his health resulting from Defendants' failure to provide a low-sodium diet.

Given the Court's inability to pinpoint any excessive threat to Plaintiff's health posed by the food provided to him, it is not clear that any Defendant was aware of a specific risk to Plaintiff's health.  Plaintiff vaguely alleges that he filed complaints and Defendants did not remedy the situation.  Plaintiff does not specify what the contents of his complaints were, making it unclear that the complaints put Defendants on notice of any excessive risk to Plaintiff's health.  Some aspects of Plaintiff's complaints about the food are frivolous: Plaintiff complains about not receiving hot meals, being forced to buy noodles at the canteen at "inflated prices,"and the food tasting too salty. Plaintiff fails establish that Defendants acted with deliberate indifference.  It is not clear from Plaintiff's complaint what facts Defendants were aware of and whether they knew about an excessive risk to Plaintiff and deliberately ignored that risk.  It is not clear whether Plaintiff ever became

1    seriously ill because of the food, and Plaintiff does not allege that any other inmates became

2    seriously ill because of the food.  Therefore, it is unclear how or why jail officials would believe that

3    the food being provided to inmates was so inadequate it posed an excessive risk to Plaintiff's health.

4           Plaintiff fails to state any cognizable claims related to the diet provided at Madera County

5    Jail.  Given the lack of clarity in Plaintiff's allegations and the illegibility of Plaintiff's handwriting,

6    it is not entirely clear that Plaintiff's claims cannot be remedied by further leave to amend.  Plaintiff

7    will be given one more opportunity to amend his claims.  Plaintiff is advised that he must write his

8    complaint legibly and specifically identify the risk to his health that resulted from the food that he

9    was being given and must allege facts that demonstrate that Defendants were aware of these risks

10   and deliberately ignored them.  Defendants do not act with deliberate indifference if they do not

11   believe Plaintiff's complaints about the food.

12          **B.**      **Plaintiff's Second Claim for Relief**

13          Plaintiff complains that "phone cards were eradicated off of canteen . . . ."  Plaintiff

14   complains that he was "not to be able to call phones that are blocked of family etc."  It is unclear

15   what calling a phone "that are blocked of family" means.  Plaintiff concludes that the failure to

16   provide phone cards at the canteen resulted in Plaintiff being unable to access the courts because the

17   courts do not accept collect calls.  Prisoners have a constitutional right of access to the courts.  See

18   Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Bradley v.

19   Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) (discussing the right in the context of prison grievance

20   procedures); Vandelft v. Moses, 31 F.3d 794, 796 (9th Cir. 1994); Ching v. Lewis, 895 F.2d 608,

21   609 (9th Cir. 1989) (per curiam).  To establish a violation of the right of access to the courts, a

22   prisoner must establish that he or she has suffered an actual injury, a jurisdictional requirement that

23   flows from the standing doctrine and may not be waived.  See Lewis, 518 U.S. at 349.  An "actual

24   injury" is "'actual prejudice with respect to contemplated or existing litigation, such as the inability

25   to meet a filing deadline or to present a claim.'"  Id. at 348.

26          The fact that phone cards were no longer sold at the canteen did not result in a violation of

27   Plaintiff's constitutional rights.  While Plaintiff does enjoy a constitutional right of access to the

28   courts, Plaintiff presents no facts or arguments that having access to a phone card and calling the

6

courts is necessary to access the courts.  Plaintiff need not call the courts to have access to the court system, as evidence by the fact that Plaintiff is able to file a complaint and litigate this action. Further, Plaintiff has failed to identify an actual injury that he suffered with respect to contemplated or existing litigation as a result of not being able to purchase a phone card.  Plaintiff fails to state any cognizable claims based on the lack of phone cards at the canteen.

### C.   Plaintiff's Third Claim for Relief

Plaintiff complains that he is unable to access "media, religion, educational programs, news, comedy of African Americans on race, religion, etc. of B.E.T. Black Entertainment Television" and that various Spanish music stations are broadcasted in the jail.  Plaintiff characterizes the failure to broadcast B.E.T. as discrimination.  Plaintiff has not alleged facts that rise to the level of a constitutional violation.  The inability to watch B.E.T. cannot be characterized as the denial of the minimal measure of life's necessities, foreclosing any claim under the Eighth Amendment.

Plaintiff does not allege any facts suggesting a violation of the First Amendment.  As an initial matter, it is unclear whether jail officials are censoring B.E.T. or if Plaintiff is complaining that jail officials are refusing to purchase a television broadcasting package that includes B.E.T.  As to the latter basis, Plaintiff cites no authority and the Court is unable to find any that states that the right to free speech imposes a duty on jail officials to purchase television channels such as B.E.T. whenever an inmates requests it.

Plaintiff does not allege any facts that suggest that B.E.T. was being censored by jail officials. Plaintiff does not allege that the televisions in Madera County Jail currently receive B.E.T. and jail officials are censoring B.E.T. by refusing to allow inmates to change the television channel to B.E.T., or actively taking steps to block the channel when it would otherwise be broadcasted normally.  Plaintiff alleges that B.E.T. "was placed in category[sic] of other video music channels that's paid for by inmate welfare fund. . . ."  Plaintiff's allegations are unclear but it appears to imply that the "inmate welfare fund" was willing to pay for B.E.T. and the jail refused to allow it.  Plaintiff does not explain what the "inmate welfare fund" is and Plaintiff does not explain why jail officials did not allow the "inmate welfare fund" to pay for B.E.T.  It is unclear whether the jail has a policy of allowing inmates to purchase additional television channels and B.E.T. was singled out and

banned.  Plaintiff does not allege that the "inmate welfare fund" was allowed to purchase other television channels for inmates.  Plaintiff fails to state a cognizable claim for a First Amendment violation.  However, given the ambiguity of Plaintiff's allegations, the Court will permit Plaintiff to amend his claim.

Finally, the denial of B.E.T. is not discrimination under the Equal Protection Clause of the Fourteenth Amendment.  The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). A plaintiff may establish an equal protection claim by showing that the plaintiff was intentionally discriminated against on the basis of the plaintiff's membership in a protected class. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir.2001). Under this theory of equal protection, the plaintiff must show that the defendants' actions were a result of the plaintiff's membership in a suspect class, such as race. Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir.2005). Plaintiff offers no allegations that jail officials treated Plaintiff differently than any other inmate on account of his race.  Plaintiff does not allege that other classes of inmates have access to B.E.T., or that jail officials intentionally censored B.E.T. to discriminate against African American inmates. Plaintiff fails to state any cognizable claims based on the denial of B.E.T.

### D.   Plaintiff's Fourth Claim for Relief

Plaintiff complains that his constitutional rights were denied because of deficiencies in the law library.  Plaintiff complains that the books are out of date, there is no copy machine, and there is no "modern technology tools computer lexis nexus" in the law library.  As discussed previously, in order to state a claim for the denial of access to the courts, Plaintiff must allege that he suffered actual prejudice in existing or contemplated litigation.  See discussion supra Part III.B.  Plaintiff attempts to do so here by vaguely alleging that the inadequate law library "caused injury to Plaintiff's civil rights motion appeal dec. 26, 07."  Plaintiff does not identify what "injury" he suffered in his "civil rights motion appeal," and there is no indication that the injury was caused by inadequate access to legal materials.  Plaintiff does not identify the lawsuit that he suffered injury in and does not provide any specifics about the disposition of the lawsuit, such as whether it was dismissed on the merits, dismissed because of Plaintiff's inability to meet a deadline, etc.  Plaintiff does not

1    explain how access to more sophisticated legal materials would have saved his "civil rights motion

2    appeal" from whatever injury he sustained.  Plaintiff fails to state any cognizable claims for the

3    interference with his access to the courts.

4         **E.    Plaintiff's Fifth Claim for Relief**

5         Plaintiff complains that Defendants opened Plaintiff's legal mail outside of Plaintiff's

6    presence.  It is unclear what constitutional rights are implicated by Defendants' actions.  While the

7    First Amendment protects prisoner's right to send and receive mail, Witherow v. Paff, 52 F.3d 264,

8    265 (9th Cir. 1995), Plaintiff does not allege that he was unable to receive his legal mail as a result

9    of Defendants' actions.  "[F]reedom from censorship [under the First Amendment] is not equivalent

10   to freedom from inspection or perusal."  Wolff v. McDonnell, 418 U.S. 539, 576 (1974).  There is

11   no suggestion that Plaintiff's mail was censored when it was read outside Plaintiff's presence and

12   there is no suggestion that Defendants' actions chilled such communications.

13        Plaintiff also claims that Defendants' actions violated the Eighth Amendment.  However,

14   Plaintiff provides no explanation as to why inspecting his legal mail can be characterized as the

15   denial of the minimal measure of life's necessities.

16        Finally, Plaintiff alleges that the inspection of Plaintiff's legal mail violated his rights under

17   the Fourteenth Amendment.[2]  Plaintiff's rights under the Fourteenth Amendment are possibly

18   implicated where the inspection of Plaintiff's legal mail interferes with Plaintiff's access to the

19   courts.  However, in order to state an access to the courts claim, Plaintiff must identify an actual

20   injury that he suffered as a result of Defendants' actions.  See discussion supra Part III.B.  Plaintiff

21   does not allege any actual injury.  There is no allegation that he suffered injury, such as intrusion

22   upon the attorney-client relationship.  Plaintiff does not identify the contents of the "legal mail."

23   Plaintiff does not allege that it was mail from an attorney representing him in an existing criminal

24   or civil matter.  Further, "[m]ail from the courts, as contrasted to mail from a prisoner's lawyer, is

25   not legal mail."  Keenan v. Hall, 83 F.3d 1083, 1094 (9th Cir. 1996).  "All correspondence from a

26

27        [2]Plaintiff also alleges a violation of the Fifth Amendment.  However, the "the Fifth Amendment's due
     process clause applies only to the federal government."  Bingue v. Prunchak, 512 F.3d 1169, 1174 (9th Cir. 2008).
28   Plaintiff's is complaining about actions by state actors, and therefore his due process claims arise out of the
     Fourteenth Amendment, not the Fifth Amendment.

1  court to a litigant is a public document, which prison personnel could if they want inspect in the

2  court's files." Id. at 1094 (citing to Martin v. Brewer, 830 F.2d 76, 78 (7th Cir. 1987)).  Therefore,

3  "legal mail" from a court is not entitled to protection beyond that which is afforded to ordinary mail.

4  Plaintiff does not allege what the contents of his "legal mail" was, and provides no argument as to

5  how opening it outside his presence infringes upon any recognized constitutional right. Plaintiff fails

6  to state any claims based on the inspection of his "legal mail."

7          **F.    Plaintiff's Sixth Claim for Relief**

8          Plaintiff complains that Defendant Renee Martinez took Plaintiff's legal supplies and

9  discarded Plaintiff's property "using a security measure as a tool to retaliate of complaints." Plaintiff

10 fails to state a claim for interference with Plaintiff's access to the courts because Plaintiff does not

11 identify any actual injury that he suffered as a result of Martinez's actions. See discussion supra Part

12 III.B.

13         Plaintiff also fails to state a claim under the Fourteenth Amendment.  The Due Process

14 Clause protects prisoners from being deprived of property without due process of law, Wolff v.

15 McDonnell, 418 U.S. 539, 556 (1974), and prisoners have a protected interest in their personal

16 property, Hansen v. May, 502 F.2d 728, 730 (9th Cir.1974).  Whether a deprivation of property rises

17 to the level of a constitutional violation depends on whether the deprivation was negligent or

18 unauthorized.  A negligent deprivation of property does not violate the Due Process Clause when

19 adequate post-deprivation remedies are available because pre-deprivation process is impracticable

20 since the state cannot know when such deprivations will occur.  Hudson v. Palmer, 468 U.S. 517,

21 533 (1984).  Similarly, an intentional, but unauthorized, deprivation of property does not violate the

22 Due Process Clause when adequate post-deprivation remedies are available.  Id.  California law

23 provides an adequate post-deprivation remedy for any unauthorized property deprivations.  Barnett

24 v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810-895).  Plaintiff

25 appears to be alleging an intentional and unauthorized deprivation of his property, which is not a due

26 process violation because California law provides an adequate post-deprivation remedy for

27 Plaintiff's loss.

28 ///

Plaintiff characterizes Martinez's actions as "a tool to retaliate of complaints." In the prison context, allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "[A] viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

Plaintiff may be able to amend his complaint to state a claim for retaliation against his exercise of his First Amendment rights. However, as it is currently written, Plaintiff fails to provide sufficient facts to support a plausible claim for retaliation. Plaintiff does not identify what sort of complaint he made, does not allege how Martinez knew about the complaints, and does not allege why Martinez would retaliate against Plaintiff because of the complaints. Plaintiff does not allege that the complaints were about Martinez's conduct. Plaintiff does not otherwise allege any facts that plausibly support the conclusion that Martinez's actions were retaliatory. Further, Plaintiff does not allege that Martinez's actions chilled Plaintiff's exercise of his First Amendment rights. While the Ninth Circuit has suggested that alleging harm is sufficient "since harm that is more than minimal will almost always have a chilling effect," Rhodes v. Robinson, 408 F.3d 559, 568 n.11 (9th Cir. 2005), it is not clear that the harm suffered here is "more than minimal." Plaintiff does not identify what sort of property was discarded. Plaintiff fails to state any claims under section 1983 based on the deprivation of his property.

### G. Plaintiff's Seventh Claim for Relief

Plaintiff complains that Defendant Rodriguez "fails to hire African American worker. . . ." Plaintiff fails to demonstrate how Rodriguez's failure to hire African American workers is a violation of Plaintiff's constitutional rights. Plaintiff's allegations are unclear. Plaintiff alleges that

the failure to hire an African American worker "cause[d] tension and subjects Blacks to harm by removing an ethnic inmate who was of same diverse to put Afro American causes . . . ." The Court is unable to understand Plaintiff's allegations. It is unclear how black inmates were subjected to harm and the Court does not understand Plaintiff's reference to the removal of an ethnic inmate. Plaintiff fails to state any cognizable claims in his seventh claim for relief.

**H.      Plaintiff's Eighth Claim for Relief**

Plaintiff complains that he was placed in danger because he was labeled "as keep aways on a gang member who's[sic] gang harassed me with (illegible) threats when we've programmed together before; Plaintiff was projected as an informant by keep aways gang." The Court is unable to understand Plaintiff's allegations. It is unclear what being labeled as a "keep aways on a gang member" means. Nor is it clear what it means to be "projected as an informant by keep aways gang." Plaintiff fails to state any cognizable claims in his eighth claim for relief.

**I.      Plaintiff's Ninth Claim for Relief**

Plaintiff complains that Martinez denied Plaintiff access to the law library, access to the courts, and locked down Plaintiff for speaking. Plaintiff's vague allegations are insufficient to support any claims. It is unclear what Plaintiff's claim is. Plaintiff fails to state an access to the courts claim because Plaintiff has not alleged any actual injury in existing or contemplated litigation. See discussion supra Part III.B. Plaintiff's allegations are too vague to support a retaliation claim. See discussion supra Part III.F. Plaintiff does not provide any details explaining how he was locked down for speaking. Plaintiff does not allege when, where, how, or what he was speaking about, factors that are all relevant to determine whether Defendant Martinez's actions were an appropriate response to Plaintiff's behavior. Further, Plaintiff has not alleged any facts that demonstrate a plausible connection between Plaintiff's speaking and Martinez's response, making it unclear whether Martinez's actions were retaliatory. Plaintiff fails to state any cognizable claims in his ninth claim for relief.

**J.      Federal Rules of Civil Procedure**

As noted previously, Plaintiff's complaint is difficult to read, and contains confusing sentence fragments and improperly used legal terminology. Plaintiff's handwriting is small and at

times illegible.  As a result, Plaintiff's allegations are difficult to understand.  The Court advises Plaintiff of the following requirements under the Federal Rules of Civil Procedure regarding the general formatting of his complaint.

Plaintiff's complaint must contain "a <u>short</u> and <u>plain</u> statement of the claim showing that [Plaintiff] is entitled to relief".  Federal Rule of Civil Procedure 8(a)(2) (emphasis added).  "Each allegation must be <u>simple</u>, <u>concise</u>, and <u>direct</u>."  Federal Rule of Civil Procedure 8(d)(1) (emphasis added).  "A party must state its claims or defenses in <u>numbered paragraphs</u>, <u>each limited as far as practicable to a single set of circumstances</u>."  Federal Rule of Civil Procedure 10(b) (emphasis added).  "[E]ach claim founded on a separate transaction or occurrence . . . <u>must be stated in a separate count</u>".  Federal Rule of Civil Procedure 10(b) (emphasis added).  Plaintiff's complaint will be dismissed with leave to amend.  Plaintiff's amended complaint must clearly state <u>individually</u> for <u>each Defendant</u> 1) who that Defendant is; 2) what that Defendant did; 3) what right that Defendant violated; and 4) how that Defendant's actions violated that right.  Defendants are not sued collectively and each Defendant is only liable for the injuries that their own actions cause.  <u>See</u> <u>Leer v. Murphy</u>, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.")

Plaintiff must draft his complaint in <u>legible</u> handwriting.  Plaintiff must write in letters large enough to read, use complete sentences, and avoid using legal terminology in incorrect places.

The Court also notes that Plaintiff raises many unrelated claims in a single complaint. Plaintiff is advised that in order to raise multiple claims in a single lawsuit, the joinder of the claims must be permitted by the Federal Rules of Civil Procedure.  A basic lawsuit is a single claim against a single defendant.  Federal Rule of Civil Procedure 18(a) allows a plaintiff to add multiple claims to the lawsuit when they are against the same defendant.  Federal Rule of Civil Procedure 20(a)(2) allows a plaintiff to join multiple defendants to a lawsuit where the right to relief arises out of the same "transaction, occurrence, or series of transactions" and "any question of law or fact common to all defendants will arise in the action."  However, unrelated claims that involve different defendants must be brought in separate lawsuits.  <u>See</u> <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir.

2007).  This rule is not only intended to avoid confusion that arises out of bloated lawsuits, but also to ensure that prisoners pay the required filing fees for their lawsuits and prevent prisoners from circumventing the three strikes rule under the Prison Litigation Reform Act.[3]  28 U.S.C. § 1915(g). Plaintiff is advised that if he opts to amend and continues to raise factually unrelated claims against different defendants in a single action, the impermissibly joined claims will be severed and dismissed from this action.

**IV.    Conclusion and Order**

The Court has screened Plaintiff's complaint and finds that it does not state any claims upon which relief may be granted under section 1983.  The Court will provide Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the court in this order. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  Plaintiff is cautioned that he may not add unrelated claims involving different defendants in his amended complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

If Plaintiff opts to amend, his amended complaint should be brief.  Fed. R. Civ. P. 8(a). Plaintiff must identify how each individual defendant caused the deprivation of Plaintiff's constitutional or other federal rights: "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."  Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). With respect to exhibits, while they are permissible if incorporated by reference, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a).  In other words, it is not necessary at this stage to submit evidence to prove the allegations in Plaintiff's complaint because at this stage Plaintiff's factual allegations will be accepted as true.

However, although Plaintiff's factual allegations will be accepted as true and that "the pleading standard Rule 8 announces does not require 'detailed factual allegations'", "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). (quoting Bell Atlantic Corp. v. Twombly,

---

[3]The Prison Litigation Reform Act allows prisoners to file complaints without prepayment of the filing fee unless they have previously filed three frivolous suits as a prisoner.  28 U.S.C. §1915(a),(g).

1    550 U.S. 544, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content

2    that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

3    alleged."  Id. (citing Twombly, 550 U.S. at 556).

4         Finally, Plaintiff is advised that an amended complaint supercedes the original complaint,

5    Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567

6    (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded

7    pleading," Local Rule 15-220.  Plaintiff is warned that "[a]ll causes of action alleged in an original

8    complaint which are not alleged in an amended complaint are waived."  King, 814 F.2d at 567 (citing

9    London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at

10   1474.  In other words, even the claims that were properly stated in the original complaint must be

11   completely stated again in the amended complaint.

12        Accordingly, based on the foregoing, it is HEREBY ORDERED that:

13   1.   Plaintiff's complaint is dismissed, with leave to amend, for failure to state a claim;

14   2.   The Clerk's Office shall send Plaintiff a complaint form;

15   3.   Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an

16        amended complaint;

17   4.   Plaintiff may not add any new, unrelated claims to this action via his amended

18        complaint and any attempt to do so will result in an order striking the amended

19        complaint; and

20   5.   If Plaintiff fails to file an amended complaint, the Court will recommend that this

21        action be dismissed, with prejudice, for failure to state a claim.

22   IT IS SO ORDERED.

23   Dated:   **April 9, 2010**            **/s/ Gary S. Austin**
                                      UNITED STATES MAGISTRATE JUDGE